283 So.2d 342 (1973)
The FIRST NATIONAL BANK IN ST. PETERSBURG, Florida, As Executor OF the Estate of John Joseph Shields, Deceased, Petitioner,
v.
Lucille Fleet FORD, As Legal Guardian of the Estate of Madge K. Dennis, a/K/a Margaret Kennedy Shields, Respondent.
No. 42377.
Supreme Court of Florida.
September 28, 1973.
*343 John R. Foltz of Harrison, Greene, Mann, Davenport, Rowe & Stanton, Seminole, for petitioner.
Thomas Collins of Collins, Hallett, Ford & Thurman, St. Petersburg, for respondent.
ROBERTS, Justice.
This cause is before this Court on petition for writ of certiorari granted to review the decision of the District Court of Appeal, Second District, reported at 260 So.2d 876, which purportedly conflicts with Aldrich v. Aldrich, 163 So.2d 276 (Fla. 1964).
Madge Dennis, also known as Margaret Kennedy Shields, filed suit for and was granted a divorce from her husband, John Joseph Shields, now deceased, in the Circuit Court of Pinellas County, Florida, in December, 1966. The final decree of divorce awarded her $200 per month as permanent alimony "... for the rest of her life or until she remarries." Decedent in compliance with the decree paid said monthly allowance up to the time of his death on February 9, 1970, at which time payments ceased. The parties stipulated that John Shields never contested the alimony allowance and that there was no express contract in writing between the parties litigant for the payment of alimony beyond the death of the husband.
The present action was instituted by respondent, as Guardian of the Estate of Madge Dennis, who brought a petition against the Estate of John Shields seeking to enforce the alimony provision of the final decree of divorce by requiring the estate to continue the payment of $200 per month. This petition for continued alimony was denied by the trial court on the basis that "... the final decree of divorce did not provide that the alimony in the amount of $200 per month payable by the defendant to the plaintiff should be a charge upon his estate in case of his demise... ."
Upon appeal, the District Court reversed explicitly holding:
"Preliminarily, we have no trouble in construing the alimony award in the divorce *344 decree as providing for alimony payments after the death of the husband if the wife outlived him. The decree provided for alimony `for the rest of her life' and the only condition imposed was that she not remarry. In Johnson v. Every [93 So.2d 390, 392 (Fla. 1957)], the term `until the death of the wife' used in connection with alimony meant that:
`... the husband's estate remains liable for the obligation in the same manner as it is liable for any other legitimate obligation outstanding at the time of his death.'
"But our inquiry cannot stop there. The more fundamental question is whether such an award is permissible in the absence of an agreement or stipulation. Appellee correctly points out that the pronouncements of our Supreme Court in Aldrich v. Aldrich, clearly mandate that a trial judge is without authority to award alimony as a charge against the deceased ex-husband's estate during the lifetime of the wife `unless the husband has stipulated or agreed that his estate may be so bound.' Here, as in Aldrich, there was no prior express agreement between the parties that the estate would be bound.
"Were this the sole teaching of Aldrich we would be required to affirm. However, Aldrich holds further that when the husband did not appeal from the decree, and had paid the amounts specified therein without question for many years, he had in effect consented to all its provisions respecting alimony. The decree thus became final and is `not now subject to collateral attack.' The stipulated facts in this case bring it within this latter discipline of Aldrich and we must, therefore, reverse."
The aforestated decision of the District Court in the instant cause is clearly in accord with the principles announced in Aldrich v. Aldrich, supra.
However, we take this opportunity to reemphasize our parenthetical note in Aldrich v. Aldrich, supra, relative to modification of alimony decrees and agreements as provided by Florida Statutes, Section 61.14,[1] F.S.A. (previously Florida Statutes, Section 65.15) wherein we stated,

*345 "... that a decree awarding technical alimony  that is, `nourishment' or `sustenance'  to the wife, even though based upon the stipulation or agreement of the parties as to the amount thereof, is subject to modification by the court when a change of circumstances is shown, under our statute expressly authorizing modification of such agreements. Sec. 65.15, Fla. Stat. (1963) F.S.A. And it would seem that the equity court would have jurisdiction to modify a decree of divorce awarding alimony payable in installments, after the death of the husband, so as to grant a gross sum out of the estate of the deceased in lieu thereof."
In a situation where an elderly husband married to a youthful wife enters into an agreement whereby the husband's estate will be bound to continue alimony payments and a decree of dissolution is entered providing that the divorced wife should receive alimony for the "rest of her life or until she remarries" or such a decree is entered without prior agreement but also without being challenged by appeal, the closing of an estate could be delayed for years causing much hardship to the executor and beneficiaries of the estate. However, the chancellor in equity armed with Florida Statutes, Section 61.14, and with Florida Statutes, Section 61.08 F.S.A.,[2] allowing for payment of alimony in a lump sum and upon appropriate application by the personal representative of the estate may reexamine the alimony award and give consideration to the awarding of a lump sum in lieu of her interest which the circuit judge determines to be adequate in accordance with statutory guidelines for modification so as not to delay the closing of estates and to preclude an indefinite postponement thereof. The chancellor may consider the present worth of the life expectancy, the probability of remarriage, the separate estate of the wife, her prospects of gainful employment, health and other equitable factors in so doing.
This Court in Aldrich v. Aldrich, supra, explicated that there was nothing in Florida Statutes, Chapter 65, or any other statute of this state that authorized a trial judge to decree that "alimony" in its technical sense continue as a charge against the deceased ex-husband's estate during the lifetime of the wife unless the husband has stipulated or agreed that his estate be so bound. At the time that decision was rendered, the statutory provision providing for alimony upon decree of divorce, Florida Statutes, Section 65.08 (1963), which subsequently was only slightly modified by Ch. 67-254, Laws of Florida, (Florida Statutes, Section 61.08, 1967), F.S.A., stated,
"Alimony upon decree of divorce.  In every decree of divorce in a suit by the wife, the court shall make such orders touching the maintenance, alimony and suit money of the wife, or any allowance to be made to her, and if any, the security to be given for the same, as from the circumstances of the parties and nature of the case may be fit, equitable and just; but no alimony shall be granted to an adulterous wife. In any award of permanent alimony the court shall have jurisdiction to order periodic payments or payment in lump sum, or both, in its discretion."
In view of the new no-fault divorce law, we find it necessary to reexamine our decision in Aldrich, and to reconsider the question of whether a decree of alimony that purports to bind the estate of a deceased husband is permissible in the absence of an express prior agreement between the two spouses authorizing or contemplating *346 such a decree. By promulgation of the new Dissolution of Marriage Act in Florida, the Legislature of this state substantially revised the procedure for obtaining a divorce. Specifically, the statutory provision providing for the award of alimony was revised to read,
"(1) In a proceeding for dissolution of marriage, the court may grant alimony to either party, which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic payments or payments in lump sum or both. The court may consider the adultery of a spouse and the circumstances thereof in determining whether alimony shall be awarded to such spouse and the amount of alimony, if any, to be awarded to such spouse.
(2) In determining a proper award of alimony, the court may consider any factor necessary to do equity and justice between the parties." (emphasis supplied)
Considering the rule announced in Aldrich in conjunction with this new statutory provision, we find it necessary to slightly modify that rule although we still generally adhere to it. Chapter 61, Florida Statutes, as revised by Ch. 72-241, Laws of Florida, authorizes the trial judge to take into consideration any factor necessary to do equity and justice between the parties in his determination of a proper award of alimony. Where an elderly husband (or wife), after decades of marriage, divorces his elderly wife (or husband) who has passed all opportunity for employment and/or has fallen upon ill health, and the parties have not expressly agreed to allow alimony to continue into his (or her) estate, strict application of Aldrich would result in the sudden cutting off of the infirmed spouse's sole means of support. Even though the husband (or wife) leaves a vast estate, she (or he) would be left penniless. Florida Statutes, Section 61.08 (2) allows the trial judge to consider just such a situation and to alleviate the hardship that could result and to do equity and justice between the parties.
The petition for writ of certiorari reflected apparent jurisdiction in this Court. We issued the writ and have heard argument of the parties. Upon further consideration of the matter, we have determined that the cited decision presents no direct conflict with the instant decision of the District Court of Appeal, Second District, as required by Article V, Section 3 (b)(3), F.S.A. Florida Constitution, but rather that decision is clearly in accord with Aldrich. Therefore the writ must be and is hereby discharged.
It is so ordered.
ERVIN, McCAIN and DEKLE, JJ., and MELVIN, Circuit Court Judge, concur.
CARLTON, C.J., dissents with Opinion.
BOYD, J., dissents with Opinion.
BOYD, Justice (dissenting):
I dissent.
The District Court has misconstrued and misapplied the decision of this Court in Aldrich, thereby creating conflict of the type recognized in Pinkerton-Hays Lumber Co. v. Pope.[1] In Aldrich, we held:[2]
"We therefore hold expressly what has been impliedly held by our decisions, supra, respecting this matter, and that is, that there is nothing in Ch. 65, Fla. Stat., F.S.A., or any other statute of this state that authorizes a trial judge to decree that `alimony' in its technical sense  the `nourishment' or `sustenance' of the wife  may continue as a charge against the deceased ex-husband's estate during the lifetime of the wife, unless the husband *347 has stipulated or agreed that his estate may be so bound. To hold otherwise would, in our opinion, be judicial legislation  and this we are not authorized to do."
The Aldrich decision explained and distinguished the case of Johnson v. Every[3] relied on by the District Court in the instant case, on the ground that Johnson involved a property settlement agreement wherein the husband assumed the obligation to pay alimony until his wife's death. That assumed obligation was held to persist after his death as a claim against his estate. Neither the Aldrich case nor the Johnson case support the continuation of alimony awarded by court decree as a charge against a deceased husband's estate, absent expressed provision to that effect.
I, of course, realize that the rule that alimony ceases with the death of either spouse, absent express agreement to the contrary, can create hardship, particularly in the case of an aged or infirmed spouse whose sole means of support is suddenly cut off with the death of the former spouse. The situation is particularly poignant, and perhaps deserving of legislative attention, where a large estate is left and the court is powerless to award even a pittance to the destitute former spouse of the deceased. In the case of Flagler v. Flagler,[4] we recognized the "social justice" in a similar situation involving child support payments, but stated:[5]
"But we cannot agree that courts of equity have any right or power under the law of Florida to issue such order it considers to be in the best interest of `social justice' at the particular moment without regard to established law. This court has no authority to change the law simply because the law seems to us to be inadequate in some particular case.
* * * * * *
"This court does not necessarily prefer to protect the father's power of testamentary disposition rather than the welfare of the child, but the court does feel that only the legislature has the authority to enact laws dealing with this problem."
I therefore dissent to the majority opinion.
CARLTON, Chief Justice (dissenting):
In Aldrich v. Aldrich, 163 So.2d 276 (Fla. 1964), we held that a judge had no authority to decree that alimony would continue as a charge against a deceased ex-husband's estate unless the husband so agreed. This holding has been settled law in this State ever since. We also said in Aldrich, however, that the administrator of a deceased ex-husband's estate could not collaterally attack such a decree under these particular circumstances:
1. The divorce decree specifically provided that the alimony payments would be a charge on the husband's estate if he predeceased the wife.
2. The ex-husband did not appeal from the decree.
3. The ex-husband had complied with the decree for many years (in effect, consenting to its provisions).
The District Court of Appeals and the majority of this Court have aligned the instant case with the Aldrich exception by emphasizing the similarity with respect to facts two and three above. However, fact one is the real material fact at issue, and in this regard the two cases are dissimilar.
In the instant case, the decree did not expressly charge the husband's estate; it simply stated that alimony was to continue until the wife died or until she remarried. Implicit in that statement is the condition *348 that alimony would also stop at the death of the husband, since there was no law authorizing it beyond his death. We do not require trial judges to specifically list all the conditions and limitations imposed by law in every judgment, order, and decree they issue. Why should we require a judge to say, "Of course, this award of alimony also terminates on the husband's death, because I am not authorized to bind his estate"?
We have never before, to my knowledge, interpreted the language of any final decree or order, no matter how vague or indefinite, so as to ascribe to the trial judge a total ignorance of the requirements of the law. Were the final decree involved in this case before us today on an appeal from the divorce, I am certain that this Court would not hold that the trial judge either intentionally or ignorantly intended to bind this husband's estate through the language he used. This alimony award might well have been appealed if the trial judge had specifically done that, but there was no reason to appeal. The law was clear that the husband's estate could not be bound without his consent, and the final decree did not specifically so charge his estate so as to make applicable the Aldrich exception.
I can see no reason for receding from our Aldrich decision that alimony may not be made a charge against a husband's estate unless he so agrees. If we are to change the law in this respect, however, we cannot do so retroactively. There are probably thousands of divorce decrees which have been rendered since our Aldrich decision in which an award of alimony was made in language similar to that involved here. The majority opinion in this case will now give to this language an interpretation which was clearly unlawful at the time, which was neither intended by the judge nor understood by the parties, and which cannot now be appealed.
Therefore, I dissent.
NOTES
[1] 61.14 Modification of alimony judgments; agreemeents, etc. 

(1) When the parties have entered into, or hereafter enter into, an agreement for payments for, or instead of, support, maintenance, or alimony, whether in connection with a proceeding for dissolution or separate maintenance or with any voluntary property settlement, or when a party is required by court order to make any payments, and the circumstances or the financial ability of either party has changed since the execution of such agreement or the rendition of the order, either party may apply to the circuit court of the circuit in which the parties, or either of them, resided at the date of the execution of the agreement or reside at the date of the application, or in which the agreement was executed or in which the order was rendered, for a judgment decreasing or increasing the amount of support, maintenance, or alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances and the financial ability of the parties, decreasing, increasing, or confirming the amount of separate support, maintenance or alimony provided for in the agreement or order.
(2) When an order is modified pursuant to subsection (1), the party having an obligation to pay shall pay only the amount of support, maintenance, or alimony directed in the new order, and the agreement or earlier order is modified accordingly. No person shall commence, or cause to be commenced, as party or attorney or agent or otherwise, in behalf of either party in any court, an action or proceeding otherwise than as herein provided, nor shall any court have jurisdiction to entertain any action or proceeding otherwise than as herein provided to enforce the recovery of separate support, maintenance, or alimony otherwise than pursuant to the order.
(3) This section is declaratory of existing public policy and of laws of this state which are hereby confirmed in accordance with the provisions hereof. It is the duty of the circuit court to construe liberally the provisions hereof to effect the purposes hereof.
(4) If a party applies for a reduction of alimony or child support and the circumstances justify the reduction, the court may make the reduction of alimony or child support regardless of whether or not the party applying for it has fully paid the accrued obligations to the other party at the time of the application or at the time of the order of modification.
[2] Florida Statute 61.08 F.S.A. (formerly Florida Statute 65.08) provides, in pertinent part, "(1) In a proceeding for dissolution of marriage, the court may grant alimony to either party, which alimony may be rehabilitative or permanent in nature. In any award of alimony, the court may order periodic payments or payments in lump sum or both. ..." (e.s.)
[1] 127 So.2d 441 (Fla. 1961).
[2] Aldrich v. Aldrich, 163 So.2d 276, 280 (Fla. 1957).
[3] 93 So.2d 390 (Fla. 1957).
[4] 94 So.2d 592 (Fla. 1957).
[5] Id. at 594. See also this writer's dissenting opinion in Baron v. Bailey, 275 So.2d 519, 521 (Fla. 1973).